JOHN B. HOCKING, Respondent, v. E. W. CHAFFEE, Appellant.

(227 N. W. 215.)

Opinion filed October 24, 1929.

*Shure & Murphy,* for appellant.

*Gordon. W. LaBree* and *Lawrence, Murphy & Nilles,* for respondent.

CHRISTIANSON, J.   Prior to 1922 the Amenia and Sharon Land Company owned certain farms in Cass county in this state.   One of these farms was occupied and operated by a tenant named Vere P. Budrow.   In 1922 the stockholders of the Amenia and Sharon Land Company arranged to liquidate the company, and to distribute its assets among the various stockholders.   The assets consisted, principally, of farm lands.   In the distribution the several farms were turned over

as going concerns, that is, any particular shareholder to whom a tract of land was transferred was placed in the position of the Amenia and Sharon Land Company as regards such land; and where the land was then occupied by a tenant, the shareholder to whom the land was transferred received not only the land but also whatever interest the land company had in any outstanding farm contracts, including whatever indebtedness might be owing by the particular tenant to the company. The defendant, Chaffee, was one of the stockholders in the Amenia and Sharon Land Company. The tract of land which had been farmed and was then occupied by Budrow was transferred by the company to the defendant Chaffee, and Budrow was advised of that fact. Thereafter Budrow entered into contracts with Chaffee for the operation of the farm. At the close of the farming season of 1924 the business relations between Chaffee and Budrow were terminated. A sale was had of some of Budrow's personal property. This suit involves the transactions had between Budrow and Chaffee in 1924 and the amount, if any, due by Chaffee to Budrow at the close of their business relations in 1924. The plaintiff Hocking brought this suit as assignee of Budrow seeking to recover a certain sum which he claims was due to Budrow from Chaffee in the fall of 1924.

The evidence shows that Budrow was indebted to the plaintiff, Hocking, in approximately the sum of $1,200 and that on October 20, 1924, Budrow delivered to Hocking the following written order or assignment:

"E. W. Chaffee, Amenia, N. Dak., You will please pay to J. B. Hocking any and all money in your possession at this time and all money belonging to me that may come into your possession hereafter as a result of my farming operations for you during the year 1924 and charge the same to my account.

"This order to operate as an assignment of all of said funds over and above the amount that you may be entitled to deduct therefrom by virtue of our farming contract for the year 1924.

"Vere P. Budrow."

In his complaint the plaintiff alleges that during the month of November, 1924, the defendant Chaffee, at the request of Budrow, prepared, rendered and delivered to Budrow a written statement and

accounting relating to the produce of said farm and showing the state of accounts between them; and that according to said statement and accounting the defendant Chaffee was and is indebted to Budrow in the sum of $588.68. The complaint further alleges that during the fall of 1924 it was mutually agreed between Budrow and Chaffee that certain produce of said farm, to wit, hay and corn, should be disposed of at public auction; that they were so sold and that the proceeds of said sale, aggregating in all $378, were the property of Budrow; that by virtue of the premises Chaffee is indebted to Budrow in the sum of $968.68; that he has not paid the same nor any part thereof to the plaintiff although payment has been demanded.

The undisputed evidence shows that on December 1, 1923 Budrow executed and delivered a promissory note payable to the Amenia and Sharon Land Company for the sum of $4,791.99. The note was payable on demand and secured by a chattel mortgage on certain livestock and farm machinery. The undisputed evidence further shows that in the fall of 1924 an arrangement was made between Budrow and Chaffee whereby it was agreed that all chattels described in the chattel mortgage should be sold at public auction and that the moneys received from the sale should be credited upon the note. The sale was held as agreed upon, Budrow was present and assisted therein. In addition to the property described in the mortgage there was also sold certain hay and corn belonging to Budrow. There was received for such hay and corn $378. All the proceeds of the sale, including said $378, were received by Chaffee and he credited on the note all the moneys received, aggregating in all $2,392.51. The balance due upon the note after credits had been made amounted to $2,800 and over. In other words, the evidence clearly and conclusively shows that after applying all the proceeds of the sale there remained due and owing upon the note executed by Budrow a sum far in excess of the alleged balances due to Budrow from Chaffee. And it is conceded that if this note had been assigned to and was the property of the defendant Chaffee before he had notice of the assignment from Budrow to the plaintiff Hocking, that the plaintiff is not entitled to recover. It is the claim of the plaintiff, however, that the evidence in this case is such that it cannot be said as a matter of law that Chaffee was the owner of the note; but

that it was a question for the jury to determine whether he was or was not such owner.

We have already alluded to the evidence as regards the distribution of all the assets of the Amenia and Sharon Land Company among the stockholders thereof. It is undisputed that in carrying out such distribution, the land occupied by Budrow and in question here was transferred to Chaffee and that thereafter Budrow entered into farming contracts with Chaffee and not with the Amenia and Sharon Land Company. Chaffee testified that he "took over" the note and mortgage at or prior to the time when he entered into the written farming contract with Budrow in March, 1924. Reed, who was the president of the Amenia and Sharon Land Company at the time of the distribution of its assets among the stockholders, and who prepared and received from Budrow the note in question here, testified that an arrangement was made for a distribution of the assets of the Amenia and Sharon Land Company among the stockholders thereof in 1922; but that in some cases the actual distribution was made at later dates. He further testified that at the time of the distribution, the defendant Chaffee was one of the stockholders in the company; that neither he (Reed) nor the Amenia and Sharon Land Company had any interest in the note and mortgage in question in October, 1924. He further testified that under the plan of distribution the indebtedness of any tenant to the Amenia and Sharon Land Company was transferred to and became the property of the stockholder to whom the land occupied by the tenant was transferred. He further testified that he did not believe that he had seen the note and mortgage since he assigned and transferred them to the defendant Chaffee. The only evidence which plaintiff claims has any tendency to show that the defendant Chaffee is not the owner of the note, is the testimony of the plaintiff Hocking. Hocking testified that in October, 1924 he notified the defendant Chaffee of the assignment which he, Hocking, had received from Budrow and gave Chaffee a copy thereof. Hocking further testified:

Q. Mr. Hocking, when you talked with Mr. Chaffee in October 1924, did he tell you anything about having the note and mortgage?

A. He said that Walter Reed had a note and mortgage of four thousand and some dollars.

Q. What was that conversation with reference to the note and mortgage?

A. Well, he said he notified Walter about an assignment of Vere's balance, because the stock and machinery would not bring enough to pay the mortgage; the mortgage was four thousand and some dollars, but he said that Walter laid down and let me beat him to it."

It is claimed that the alleged statement on the part of Chaffee testified to by Hocking, in effect, was an admission on the part of Chaffee that the note and mortgage did not belong to him at the time the conversation between Hocking and Chaffee took place. Hocking's testimony is specifically denied by Chaffee but, of course, in view of the verdict all doubt must be resolved in favor of Hocking's testimony. A careful consideration of all the evidence, however, leads us to the conclusion that giving to the testimony of Hocking all possible effect there is, nevertheless, no basis for a finding that the note and mortgage did not belong to Chaffee. There is no dispute in the evidence but that in 1922 an arrangement was made by the stockholders of the Amenia and Sharon Land Company to distribute the assets of that company among the various stockholders and that under the plan of distribution any stockholder to whom a tract of land was transferred also became the owner of all indebtedness to the company of a tenant upon the land so transferred. It is also undisputed that the land in question was transferred to the defendant Chaffee and that whatever moneys or proceeds were coming to Budrow from the farming operations in 1924 arose under a contract between Chaffee as owner of the land and Budrow as cropper; that Budrow was indebted in the full amount of the note which he had executed in December 1923; that the sale held in October, 1924, was held under an arrangement between Budrow and Chaffee, and that it was specifically understood between them that the avails of the sale should be applied and credited upon the note and chattel mortgage. The evidence shows that the arrangements for the sale were made between Budrow and Chaffee and between them alone and that these two persons and they alone were interested in the sale and in the disposition of the avails thereof. There is not even a sug-

714

gestion in the evidence (outside of the above quoted testimony of Hocking) that the Amenia and Sharon Land Company or Reed had any interest in the note or the collection thereof. The note and mortgage in suit were prepared by Reed, president of the Amenia and Sharon Land Company, but there is not the slightest foundation in the evidence for any claim that it was ever his property. The indebtedness evidenced by the note was incurred by Budrow with the Amenia and Sharon Land Company under his relation with that company and according to the undisputed evidence this indebtedness, in accordance with the plan adopted at the distribution of the assets of the land company in 1922 was transferred to and became the property of Chaffee as an incident to the transfer of the land to him. There is no evidence justifying any finding that the note ever did belong to Reed. So far as the alleged statement of Chaffee to Hocking is concerned, it may well be that Chaffee was of the mind that he could not offset the indebtedness evidenced by the note against the assignment of Hocking unless he had an assignment or order or other written authority from Budrow to do so. As we view the situation, it is not of controlling importance whether the note and mortgage had been actually assigned and delivered to Chaffee at the time Budrow made the assignment to Hocking, for it is undisputed that whether they had been so assigned and delivered, nevertheless any and all indebtedness owing by Budrow to the Amenia and Sharon Land Company actually belonged to Chaffee at all times during the year 1924. Upon this proposition, as we read the evidence, there is no dispute. Hence, even though it be true that at the time the conversation between Hocking and Chaffee was had that the note was actually in the possession of Reed, the president of the Amenia and Sharon Land Company, it nevertheless belonged to Chaffee and evidenced an indebtedness then owing to Chaffee by Budrow. As stated, it is undisputed that there remains due upon this note from Budrow more than $2,800 and it is conceded by plaintiff's counsel that if this indebtedness was owing to Chaffee in October, 1924, that the plaintiff's action must fail. As indicated, we are clearly of the opinion that the evidence in this case warrants only one conclusion, namely, that Chaffee was and is the owner of the note in question and the indebtedness evidenced thereby; that there was no indebtedness owing by Chaffee to Budrow but that Budrow was and is indebted to Chaffee,

and that, consequently, the plaintiff as Budrow's assignee, has no cause of action whatsoever against Chaffee.

Certain other questions were raised relating to whether a dismissal of a former action instituted by Hocking against Chaffee, was res adjudicata, but in view of the conclusion we have reached as to the ownership of the note and mortgage it is unnecessary to consider this question.

It follows from what has been said that the judgment appealed from must be and it is reversed with directions that the trial court order a judgment in favor of the defendant for dismissal of the action.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.